*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

SHAUN PAUL LYDIC,

        Defendant-Appellee.

FOR PUBLICATION
January 28, 2021
9:00 a.m.

No. 349216
Bay Circuit Court
LC No. 18-010667-FH

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

TUKEL, J.

The prosecution appeals as of right defendant's sentence following his jury trial conviction of assault by strangulation, MCL 750.84(1)(b), and domestic violence, MCL 750.81(2). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 17 months to 10 years in prison for the assault by strangulation conviction and 93 days in jail for the domestic violence conviction. The prosecution appeals by right, challenging defendant's assault by strangulation sentence on the basis that the trial court abused its discretion by imposing an out-of-guidelines sentence below that recommended by the advisory guidelines.[1] Defendant disagrees and argues that the trial court erred by assessing 50 points for offense variable (OV) 7. We affirm defendant's sentence.

## I. UNDERLYING FACTS

This appeal arises from a physical altercation that took place between defendant and TK on October 14, 2018. TK and defendant were involved in a romantic relationship and they resided together in an apartment in Bay City, where the events took place. On the day of the altercation, defendant had been to the hospital and was taking antibiotics to treat a serious injury to his arm. After leaving the hospital, defendant began drinking beer at home. TK told defendant to stop

---

[1] For a discussion of the greater precision of the term "out-of-guidelines" sentence as compared to the term "departure" under the now-advisory sentencing guidelines regime, see *People v Lampe*, 327 Mich App 104, 133; 933 NW2d 314 (2019) (Boonstra, J., concurring).

drinking because she believed the beer would make the antibiotics defendant was taking less effective. An argument ensued, and TK spat on defendant. Defendant then pushed TK to the ground, put a belt around her neck, choked her with it, and made threatening statements which we detail below. Following a jury trial, defendant was convicted of assault by strangulation and domestic violence. This appeal followed.

## II. OV 7

Defendant agues that the trial court erred by assessing 50 points for OV 7.[2] We disagree.

### A. STANDARD OF REVIEW

When reviewing a trial court's guidelines scoring decisions, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "The sentencing Court may consider facts not admitted by the defendant or found beyond a reasonable doubt by the jury. Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339424) (2020); slip op at 4, reversed in part on other grounds by *People v Roberts*, ___ Mich ___; 949 NW2d 454 (Docket No. 161263) (2020).

### B. OV 7 IN GENERAL

Offense variable 7 provides that 50 points are to be assessed when

" '[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.' " MCL 777.37(1)(a).

The threshold legal question in this case is whether the phrase "designed to substantially increase the fear and anxiety a victim suffered during the offense" modifies only the fourth category, *i.e.*, conduct which is "similarly egregious" to "sadism, torture and excessive brutality"; or whether even in a case involving sadism, torture or excessive brutality, the 50 point enhancement applies only if the conduct also was "designed to substantially increase the fear and

---

[2] The issue of whether OV 7 was properly scored was raised by defendant in his response brief on appeal. Because we view this issue as potentially dispositive, however, we choose to address it before the prosecution's argument that defendant's sentence was disproportionately low based on the circumstances of this case.

anxiety a victim suffered during the offense." This issue has evolved over the last several years, as we explain.

### C. *PEOPLE V HARDY;* "SUBSTANTIALLY INCREASE THE FEAR AND ANXIETY"; AND THE LEGISLATIVE RESPONSE

In *Hardy*, our Supreme Court considered the predecessor to the current OV 7. At that time,[3] OV 7 provided that 50 points were to be applied if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a) as amended by 2002 PA 137. Our Supreme Court held that

> "Or" is a word "used to indicate a disunion, a separation, an alternative." While the first "or" may be interpreted as linking the first three categories in a common series, the second "or" separates the last OV 7 category from the series that precedes it. Thus, the use of "or" before the phrase "conduct designed" shows that this phrase is an independent clause that has an independent meaning. [*Hardy*, 494 Mich at 441 (citation omitted).]

Thus, following *Hardy*, a trial court would "[p]roperly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *Id*. at 439-440. As noted, the four categories of conduct listed in subsection (1)(a) were "sadism, torture, excessive brutality," or "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." *Id*. at 440. In other words, if conduct constituted at least one of sadism, torture or excessive brutality, then the 50-point enhancement would apply simpliciter;

---

[3] For ease of reading, here are the two provisions at issue, in which only three words differ:

The current version of OV 7, MCL 777.37(1)(a), provides:

> A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.

The pre-2015 version of OV 7, MCL 777.37(1)(a) as amended by 2002 PA 137, provides:

> A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.

In other words, the amendment, 2015 PA 137, changed the guideline as follows:

> "A victim was treated with sadism, torture, ~~or~~ excessive brutality or ***similarly egregious*** conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

the fourth category was "conduct designed to substantially increase the fear and anxiety a victim suffered." *Id*. at 441.

Justice McCormack concurred in *Hardy*. While joining the majority opinion in full, Justice McCormack wrote "separately to encourage the Legislature to amend MCL 777.37, offense variable (OV) 7, to define, or more clearly articulate its intent in including, the language 'conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.' " *Id*. at 448 (MCCORMACK, J., concurring). Justice McCormack expressed concern that "the potential for subjectivity inherent in the 'conduct designed' language is likely to cause disparate outcomes for criminal defendants in this state even with the guiding principles today's decision provides." *Id*.

The Legislature did in fact amend OV 7 following *Hardy*. See 2015 PA 137, codified at MCL 777.37(1)(a). The amended version of OV 7, still in force today, now provides for a 50-point enhancement when "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).[4]

## D. COURT OF APPEALS DECISIONS FOLLOWING AMENDMENT OF OV 7

Following the amendment of OV 7, courts have addressed the question of whether the now slightly-amended phrase, "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense," is a separate, fourth category, and thus whether "sadism," "torture," and "excessive brutality," also retain their pre-amendment statuses as separate and independent categories. As with the original enactment which was at issue in *Hardy*, this inquiry boils down to whether the unamended phrase "designed to substantially increase the fear and anxiety a victim suffered during the offense," modifies only the newly added "similarly egregious" conduct; or whether it also applies to each of the categories of sadism, torture, and excessive brutality to which fourth-category conduct must be similarly egregious. This Court has twice addressed the question in published cases following *Hardy* and the amendment of the guideline language.[5] See *People v Walker*, 330 Mich App 378; 948 NW2d (2019); *People v Rodriguez*, 327 Mich App 573; 935 NW2d 51 (2019).

---

[4] See Note 3 of this opinion.

[5] We respectfully suggest that the Legislature could assist courts and perhaps head off many such disputes in the first instance through more extensive use of punctuation in drafting legislation, because "the meaning of a statute will typically heed the commands of its punctuation." *US Nat'l Bank of Oregon v Indep Ins. Agents of America, Inc*, 508 US 439, 454; 113 S Ct 2173; 124 L Ed 2d 402 (1993). Indeed, "[n]o intelligent construction of a text can ignore its punctuation." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (Thompson/West, 2012), p 161.

Michigan courts have observed that

> Punctuation is an important factor in determining legislative intent, and the Legislature is presumed to know the rules of grammar. "Semicolon" is defined as

*Rodriguez*, decided first, involved only the fourth category of conduct, and held that it requires conduct which significantly increased a victim's fear in a manner "similarly egregious" to sadism, torture, or excessive brutality. *Rodriguez*, 327 Mich App at 578-581. *Rodriguez* did not reach the issue of whether any one of the categories of sadism, torture, or excessive brutality, standing on its own, required a significant increase in the victim's level of fear, because, as noted, only the fourth category was at issue. *Id*.

*Walker* analyzed the legislative amendment of OV 7, and by essentially following the analysis in *Hardy,* held that the fourth category remained independent of the others. *Walker*, 330 Mich App at 389-390. Although the *Walker* Court recognized that legislative amendments of language generally are presumed to change statutory meaning, it dismissed the post-*Hardy* amendment of the guideline on the basis that "here it is clear that the Legislature only intended a stylistic change to improve clarity." *Id*. at 390. The Court reached that conclusion by noting that the word "or" used before the last item in the list made the entire list disjunctive; thus, it held that "similarly egregious conduct" constitutes its own category, and the "substantially increase fear" language is part of that category only. *Id*. The *Walker* Court thus read the clause "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during

---

> "the punctuation mark (;) used to indicate a major division in a sentence where a more distinct separation is felt between clauses or items on a list than is indicated by a comma, as between the two clauses of a compound sentence." [*People v Beardsley*, 263 Mich App 408, 412-413; 688 NW2d 304 (2004) (citation omitted).]

Thus, "[w]hen elements in a series are particularly complex or when one or more of the elements contains an internal comma, the sentence may be clearer with semicolons instead of commas separating the elements." *Id*. (citation omitted); see also *Park Bldg Co v George P Yost Fur Co*, 208 Mich 349, 359; 175 NW 431 (1919) (noting that the semicolon "is a punctuation point 'used to mark the division of a sentence somewhat more independent than that marked by a comma' ").

For example, and using a semicolon to show categorical demarcations, *Hardy* read the guideline this way: "A victim was treated with sadism; torture; or excessive brutality; or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Had the guideline been so punctuated, there could have been no argument that the "substantially increase the fear and anxiety" language applied to anything other than the final category. Similarly, if the legislature had intended for that language to apply to each of the guideline categories, punctuating the provision as follows also would have achieved that end without possible ambiguity: the guideline applies "If the conduct was designed to substantially increase the fear and anxiety a victim suffered during the offense, and the conduct consisted of sadism; torture; or excessive brutality."

Our only mandate is to faithfully adhere to the legislature's intent; we do not make the policy choices which guidelines, and all legislation, embody. Greater clarity through punctuation would help courts fulfill our duty of faithfully applying legislative intent.

the offense," as an independent clause, thereby necessarily interpreting "sadism," "torture," and "excessive brutality" as independent clauses themselves. *Id.* at 390-391.

*Walker* thus is entirely consistent with *Rodriguez*. *Rodriguez* involved only the fourth category, "similarly egregious conduct." *Walker* involved excessive brutality, one of the first three categories, and noted that each of those three categories is independent of the others and thus also independent of the requirement of substantially increasing a victim's fear, which is a part of the fourth category only.

Thus, a sentencing court faced with the question of the applicability of the current version of OV 7 must address it this way: (1) If the case involves conduct consisting of one or more of sadism, torture, or excessive brutality, then OV 7 applies.[6] If the case does not involve one or more of sadism, torture or excessive brutality, then the sentencing court must determine whether it involves "similarly egregious conduct" to at least one of those categories. If it does so, the court also must determine whether the conduct significantly increased a victim's fear.[7] If all of those factors are met, then OV 7 applies for purposes of the fourth category of conduct.

### E. ANALYSIS AS APPLIED TO THIS CASE

This case involves claims of excessive brutality, based on defendant choking the victim with a belt; but it also involves allegations of death threats and taunting during those violent assaults, and as we discuss in greater detail, those additional factors are at a minimum akin to sadism, as they humiliated the victim and prolonged her mental suffering. Defendant's overall conduct thus involves various factors under OV 7, some of which require and some of which do not require that the criminal conduct have substantially increased a victim's fear; but that distinction ultimately is not significant here, because the additional element of significantly increasing a victim's fear, if applicable to a particular act on the part of defendant, was easily satisfied, as discussed below.

The prosecution presented evidence that, on the night of the incident itself, TK stated that defendant threw her to the ground, dragged her a few feet on the floor, choked her with a belt, and told TK that that when her young son returned home he would find TK dead. At trial, however, there was conflicting evidence regarding the altercation that occurred between defendant and TK on the night of the assault. TK testified at trial that defendant did not choke her and that their

---

[6] OV 7 defines "sadism" in subsection 3, MCL 777.37(3), as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." The words "torture" and "excessive brutality" are undefined, and thus have their ordinary meaning. See *Hardy*, 494 Mich at 440 (opinion of the court).

[7] That analysis requires the sentencing court to determine "whether the defendant engaged in conduct beyond the minimum required to commit the offense" and, if so, "whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Rodriguez*, 327 Mich App at 5739, citing *Hardy*, 494 Mich. at 443-444.

altercation only lasted a few seconds.[8]  At sentencing, the trial judge resolved that conflict by stating that he believed that defendant choked TK with a belt and told her that her son would find her dead when he returned home.  In making that factual determination, the trial court did not clearly err, so we must treat that factual finding as conclusive.  See *Antwine*, 293 Mich App at 194; MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").

Defendant's actions, as found by the trial court, certainly involve excessive violence beyond the minimum required to commit the offense of assault by strangulation.  See *Hardy*, 494 Mich at 442-443 and 443 n 37 (opinion of the court).[9]  Assault by strangulation does not require the use of a weapon, and by using a belt, defendant increased the physical severity of the offense. The use of the belt thus satisfies the requirement of excessive brutality, and thus OV 7 applies. Additionally, death threats are not encompassed by the offense of assault by strangulation. Whether or not a death threat can itself be sadistic, a question we need not decide, the particular threats at issue here were, at a minimum, akin to sadism; the same is true of defendant's taunting of TK during the assault, to the effect that not only was TK about to die but that her body would be found by TK's minor son.  Such threats were severe enough to be treated as "similarly egregious" to sadism, based on their infliction of humiliation and other emotional suffering; as such, they require the additional element of significantly increasing the victim's fear.

We find that by gratuitously and repeatedly telling TK during the brutal assault that she was about to die, and that in addition her young son would be the one to find her dead body, defendant significantly increased TK's fear, which included not only for her own welfare, as would always be the case during a violent assault, but also the well-being of her young child as well. Such conduct certainly increased TK's fear beyond the level which would have obtained based on the assault alone.  Thus, we find the enhancement of OV 7 is applicable both as excessive brutality, on its own, and as similarly egregious conduct to sadism which significantly increased TK's fear. See *Rodriguez*, 327 Mich App at 578-759.  The trial court thus committed no error in finding that the enhancement applied.

---

[8] Thus, although not material for sentencing purposes, it appears that in convicting defendant of assault by strangulation, the jury credited the version of events TK reported the night of the incident rather than her testimony at trial.

[9] MCL 750.84(1)(b) criminalizes "[a]ssault[ing] another person by strangulation or suffocation." An "assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996).  And a "battery is the consummation of an assault." *Id.*  Additionally, MCL 750.84(2) defines "strangulation or suffocation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person."

## III. PROPORTIONALITY OF SENTENCE

The finding that OV 7 applies does not end our inquiry, however, because the prosecution argues that in imposing an out-of-guidelines sentence below the advisory sentencing range, the trial court violated the principle of proportionality. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

## B. ANALYSIS

"[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn* [435 Mich 630; 461 NW2d 1 (1990), abrogation recognized by *Steanhouse II*, 500 Mich at 453]." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (*Steanhouse II*) (citation omitted). "The nature of the offense and the background of the offender" must be taken into account when making this assessment. *Id*. at 472, quoting *Milbourn*, 435 Mich at 651.

Trial courts must consult the sentencing guidelines when imposing a sentence, but " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Id*. at 474-475, quoting *Milbourn*, 435, Mich at 661. In imposing an out-of-guidelines sentence, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the guidelines,] would have been." *People v Dixon-Bey*, 321 Mich App 490 at 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). Nevertheless, our Supreme Court has expressly rejected dicta suggesting a "presumptions of unreasonableness for out-of-guidelines sentences." *Steanhouse II*, 500 Mich at 474. Rather, the principle of proportionality simply "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; see also *Steanhouse II*, 500 Mich at 474.

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. [*Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted).]

"Other factors listed by this Court in *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) [(*Steanhouse I*)], rev'd in part on other grounds by [*Steanhouse II*, 500 Mich 453], include 'the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Dixon-Bey*, 321 Mich App at 525 n 9 (citations omitted).

At sentencing, the trial judge carefully explained his findings and reasons for imposing an out-of-guidelines sentence. Specifically, the trial judge explained that he viewed assessing 50 points under OV 7 as too harsh given the circumstances of this case. The trial judge expressed his disagreement with the scoring scheme in place for OV 7, which he viewed as an "all or nothing" guideline because, when properly scored at 50 points, it placed defendant's guidelines range "in a whole new ballpark." The trial judge additionally stated that TK "did her best to provoke" defendant and that, although TK's provocation did not justify defendant's conduct, TK's behavior during the assault nevertheless did play a part in the trial judge's sentencing decision. The trial judge contrasted these two factors with defendant's conduct in this case, including his act of strangling TK and threatening to kill her. After carefully weighing these competing factors the trial judge stated that he has discretion to sentence outside the sentencing guidelines range when doing so is appropriate and that he chose to exercise that discretion in this case. Thus, the trial judge expressed that while he was aware that he was imposing an out-of-guidelines sentence, he was of the view that the sentencing guidelines inaccurately reflected the seriousness of the crime and that the guidelines also failed to properly account for TK's provoking conduct. Because the sentencing decision by the trial judge was supported by the record, we do not find that the trial judge abused his discretion.

IV. CONCLUSION

The trial court properly scored OV 7. Furthermore, the trial court adhered to the principle of proportionality; its sentencing decision, which balanced competing considerations, was within the trial court's discretion.

Affirmed.

/s/ Jonathan Tukel
/s/ James Robert Redford
/s/ Michael J. Riordan